IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD FISHER,

    Plaintiff,

v.                                          CIV No. 01-414 WJ/LFG

CORRECTIONS CORPORATION OF AMERICA,
LORETTA LOPEZ, SARAH HAWKINS ALL AT,
10 BURTON HILLS BOULEVARD
NASHVILLE, TENNESSEE 37215

    Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION ON DEFENDANTS' MOTIONS TO DISMISS[1]

This is a *pro se, in forma pauperis* civil rights action brought by Plaintiff Richard Fisher ("Fisher") under 42 U.S.C. § 1983. Fisher's Complaint and Civil Rights Complaint form [both docketed under Doc. 1], filed April 12, 2001, allege violations of his civil rights while he was incarcerated at Torrance County Detention Facility ("TCDF"). This matter comes before the Court on Defendants' Corrections Corporation of America ("CCA") and Sarah Hawkins ("Hawkins") Motion to Dismiss, filed July 17, 2001 [Doc. 17] and Defendant Loretta Lopez's ("Lopez") Motion

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

to Dismiss, filed August 20, 2001 [Doc. 21].[2] After careful consideration of the two Motions to Dismiss, the accompanying briefs [Docs. 18, 21], Fisher's response [Docs. 25, 26], and Defendants' replies[3] [Docs. 23, 27, 28], the Court concludes that the Motions to Dismiss should be granted in part, and denied in part, for the reasons set out below.

## **Background**

Fisher's Complaints allege that during the months of November and December 2000, he failed to receive "numerous letters" at TCDF sent to him by various family members. Fisher also asserts that on or about March 21, 2000, one piece of legal mail, addressed to him from Judge Susan R. Holmes Winfield of the Superior Court of the District of Columbia (relating to a habeas matter), was opened outside of his presence and that he received only the taped up envelope from Judge Holmes, without the contents. [Doc. 1, ¶¶ 8, 10, 11-14.] These allegations appear to form the basis for Fisher's claims that his freedom of speech and due process rights, under the First and Fifth Amendments, as well as his Equal Protection rights, were violated. [Doc. 1, Counts 1-5.] Count 5 also may be read to attempt to assert a tort claim under state law.

Hawkins and Lopez argue that Fisher's Complaints should be dismissed, in their entirety as asserted against them as individual defendants, because Fisher set forth only conclusory allegations. CCA claims that the supervisory liability claims, as asserted against it, fail to state a claim because

---

[2]All Defendants are represented by the same counsel, and both Motions to Dismiss essentially present the same arguments. The separate motions apparently were filed because of different service dates on Defendants.

[3]Defendants' reply briefs argued, in part, that their Motions to Dismiss should be granted on technical grounds because Fisher had not responded to the motions by the appropriate deadline. The Court declines to rule on that basis partly because it appears that CCA's and Hawkins' Motion to Dismiss [Doc. 17] was mailed to Fisher at TCDF on July 17, 2001, when Fisher already had provided notice, as of June 4, 2001, that he had been moved to the federal penitentiary in Pollock, Louisiana. [Doc. 9.] The failure to serve Fisher at the proper address could have accounted for the delay in his response, that was filed on September 24, 2001. [Doc. 25.]

Fisher did not allege a policy that caused his injury. All Defendants argue that the First Amendment claim should be dismissed because isolated instances of interference with mail do not amount to constitutional violations. In addition, Fifth or Fourteenth Amendment Due Process claim should be dismissed, according to Defendants, because Fisher did not allege any prejudice or actual interference with his access to the courts. Finally, Defendants assert that Fisher failed to state a claim with respect to alleged state law or equal protection violations.

## Discussion

### A. Motion to Dismiss Standard

A constitutional claim under § 1983 brought by a prisoner *pro se* should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). The allegations of the complaint must be accepted at face value, for purposes of the motion. Id., at 1526. Although the *pro se* complaint must be liberally construed under this standard, Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992), it will nevertheless be dismissed under Rule12(b)(6) if it fails to state a legally cognizable claim. *See*, Denton v. Hernandez, 504 U.S. 25, 32, 112 S. Ct. 1728, 1733 (1992).

### B. Personal Involvement by Defendants Hawkins and Lopez

Personal participation is an essential allegation in a § 1983 claim. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory capacity is not sufficient, by itself, to impose liability; rather, plaintiff must allege that the supervisor knew of and acquiesced in the unconstitutional behavior, or expressly or otherwise "authorized, supervised, or participated in conduct which caused the constitutional deprivation." Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990), *cert. denied*,

3

499 U.S. 975, 111 S.Ct. 1622 (1991). Fisher must allege an affirmative link between the constitutional deprivation and either the supervisor's personal participation, her exercise of control or direction, or her failure to supervise. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).

Here, Fisher alleges that CCA employee Hawkins and CCA mail room manager Lopez "destroyed or seized" his mail, in violation of his First Amendment rights. [Doc. 1 at ¶¶ 3, 4, 5, 16, 19, 20, 25, 34.] While the allegations are marginal, Fisher does allege that both Hawkins and Lopez personally "participated" in conduct that, if established, might arise to constitutional violations. Thus, the Court concludes that these allegations are enough to withstand Rule 12(b)(6) scrutiny and declines to dismiss Lopez and Hawkins with respect to alleged violations of free speech under the First Amendment. However, Fisher still is charged with the burden of proving his allegations.

### C. Supervisory Liability of CCA

CCA argues that any supervisory claim against it should be dismissed because Fisher did not identify a "policy" or "custom" under which an employer could be held liable for its employees' acts. Fisher alleged generally that Defendants "established a policy practice or custom" that violated his constitutional rights. [Doc. 1 at ¶¶ 26, 34.] It is not entirely clear whether Fisher does seek to assert a supervisory liability claim against CCA, but to the extent he does, the Court will decline to dismiss CCA with respect to an alleged violation of free speech under the First Amendment. While Fisher's allegations regarding a policy or practice are non-specific, the Court finds that they withstand Rule 12(b)(6) standards. The same may not be true with respect to Rule 56 standards, should a motion for summary judgment be filed.

4

### D. First Amendment Freedom of Speech Claim

Fisher alleged that he failed to receive "numerous" letters from family during a two month period, and that a single piece of legal mail was opened outside of his presence with the result that he did not receive the contents of that mail. Defendants contend that Fisher's First Amendment claim regarding interference with personal and/or legal mail should be dismissed because the few letters at issue are insufficient in number or frequency to support constitutional violations. Defendants urge that, even if considered true, such allegations constitute nothing more than negligence.

It is well settled that inmates have a right to receive mail, although that right may be limited by prison regulations that are reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 421, 109 S.Ct. 1874, 1885 (1989); Turner v. Safley, 482 U.S. 78, 89, 92, 107 S.Ct. 2254, 2261-62, 2263 (1987). With respect to legal mail, a different standard is applied by the courts in order to analyze whether an inmate's constitutional rights have been violated. Wolff v. McDonnell, 418 U.S. 539, 576-77, 94 S.Ct. 2963, 2985 (1974.) In Wolff, the Supreme Court held that while legal mail may be opened and inspected by prison officials, the inmate must be present. Id. at 577, 94 S.Ct. at 2985. Further, the officials should not actually read the legal mail, they should merely inspect it for contraband. Id.

The Court agrees with Defendants that alleged interference with a single piece of legal mail is insufficient to state a claim under the First Amendment. *See* Florence v. Booker, No. 01-3152, 2001 WL 1592703 at *1 (10th Cir. Dec. 14, 2001) (summary judgment affirmed on grounds of qualified immunity where improper handling of single piece of legal mail found insufficient to show constitutional violation); *see also* Smith v. Maschner, 899 F.2d 940, 943-44 (10th Cir. 1990) (accidental "isolated incident, without any evidence of improper motive or resulting interference with

5

. . . right to counsel or access to the courts, does not give rise to a constitutional violation")[4]; Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1993) (isolated or occasional opening of legal mail outside the presence of an inmate is not necessarily a constitutional violation), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081 (1994); Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989) (same); Averhart v. Shuler, 652 F. Supp. 1504, 1506 (N.D. Ind.) (three pieces of legal mail opened outside the inmate's presence insufficient to implicate a constitutional right), *aff'd*, 834 F.2d 173 (7th Cir. 1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1045 (1988); *compare* Greeno v. Litscher, 13 Fed. Appx. 370, 376, No. 00-3140, 2001 WL 721026 at * 5 (7th Cir. 2001) (allegations that legal mail was repeatedly opened for approximately one and one-half years sufficient to state a claim); Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated claims). Therefore, to the extent that Fisher contends that his freedom of speech rights were violated, under the First Amendment, when prison officials opened one piece of legal mail outside his presence, that claim will be dismissed for failure to state a claim.

Defendants may be correct that Fisher's allegations of not receiving family mail during a two-month period also are subject to dismissal. The Seventh Circuit held that allegations of sporadic and/or short-term interference with an inmate's non-legal mail are insufficient to state a claim under the First Amendment. Zimmerman v. Tribble, 226 F.3d 568, 572-73 (7th Cir. 2000). *See also* Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) ("merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery on inmate reading materials, even as against a motion to dismiss, will not support a cause of action grounded upon the First

---

[4]Fisher's Civil Rights Complaint form alleges that the mail room staff informed him in writing that the legal mail in question was opened "accidently." [Doc. 1, at p. 2 "nature of case"]

Amendment") (internal citation omitted). However, because Fisher alleged that he had failed to receive "numerous" letters from at least three family members, the Court will allow the First Amendment Claim to proceed at this stage. Thus, Defendants' request to dismiss the First Amendment claim that concerns receipt of personal, non-legal mail is denied.

### E. Fifth/Fourteenth Amendment Due Process Claim

Fisher asserts that his Fifth Amendment due process rights were violated; however, his claim will be analyzed under the Fourteenth Amendment since the Fifth Amendment applies to federal actors unlike the Defendants named in this matter. It is not entirely clear what due process rights Fisher claims were violated. To the extent that Fisher intends to allege that he was denied access to the court in violation of his due process rights, that claim will be dismissed for failure to state a claim because he has not alleged that the prison's actions in opening one legal letter and not providing the contents caused him actual injury or any hindrance in his efforts to pursue a legal claim. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996); Greeno, 13 Fed. Appx. at 376 (citing Nance v. Vieregge, 147 F.3d 589, 591 (7th Cir.), *cert. denied*, 525 U.S. 973, 119 S.Ct. 426 (1998)).

If Fisher intended to claim that his due process liberty interests were violated when he did not receive certain personal mail, Fisher had adequate state post-deprivation remedies for the loss of any property. *See* Smith, 899 F.2d at 943 (while Smith had utilized state post-deprivation remedies the court stated generally that the availability of such remedies essentially defeated the argument that he was deprived of property without due process) (internal citations omitted.) The availability of state post-deprivation remedies undercuts any argument by Fisher that Defendants deprived him of property without due process. Id.

Finally, if Fisher was attempting to claim that his substantive due process rights were violated by the alleged seizure of the contents of legal correspondence or the mail from his family during a two month period, that claim also will be dismissed for failure to state a claim.

> Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. There are two different ways of stating a substantive due process claim. first the state violates substantive due process when it infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest. Second, the state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends 'judicial notions of fairness, [or is] offensive to human dignity.'

Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (internal citations omitted) (analyzing First Amendment right to receive mail claim, at summary judgment stage). In Weiler, an inmate failed to receive a package mailed to him. The Court concluded that the inmate had failed to allege either type of substantive due process claim. "A prisoner's entitlement to delivery of packages from family members in not a right 'rooted in the traditions and conscience of our people.'" Id. (internal citation omitted.) Moreover, the Court decided that the inmate had failed to point to any outrageous conduct by the defendants in that case. Id.

Similarly, here, Fisher simply cannot state a claim for violation of his substantive due process rights when, at most, his mail may have been interfered with for two months. In addition, Fisher has not alleged any outrageous conduct by these Defendants. Therefore, Defendants' Motions to Dismiss the substantive due process claim will be granted.

### F. Equal Protection Claim

Fisher's Complaint does not clearly assert a claim that his equal protection rights were violated. However, the Complaint does refer to an "equal protection component" and at one point

alleges that he was denied "his constitutional rights, equal protection under the law, and freedom of speech." [Doc. 1 at ¶¶ 30, 34.] To the extent that Fisher proposes to allege a violation of equal protection, that claim must be dismissed.

"The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." Weiler, 137 F.3d at 1051. Fisher did not allege any mail classification system that TCDF used to treat inmates differently from one another. In fact, he does not really contend that he was treated differently than other inmates or singled out. [Doc. 1 at ¶ 16.] For example, Fisher did not allege that the destruction or seizure of mail was directed only at him. *See* Jackson v. Burke, 256 F.3d 93, 96-97 (2d Cir. 2001) (no evidence presented at summary judgment stage to show that inmate was singled out with respect to destruction of mail). Therefore, Defendants' Motion to Dismiss the equal protection claim will be granted.

### G. State Tort Claim

It is unclear what, if any, state tort claims Fisher intended to assert in Count 5 of his Complaint. Fisher's allegations in that count that Defendants improperly performed their duties apparently are linked to and duplicative of the alleged violations of his constitutional rights under the First and Fifth Amendments. [Doc. 1 at ¶ 41.] Fisher's allegations under Count 5 fail to state a claim for any violation of state tort law, and therefore, Count 5 also will be dismissed.

### Conclusion

Fisher's sole remaining claim of First Amendment freedom of speech violations may proceed, as asserted against all three Defendants, but only with respect to the allegations concerning a seizure

of personal mail from his family. Defendants will be directed to produce a Martinez Report regarding that claim.

**Recommended Disposition**

1.	THAT Defendants' Motions to Dismiss [Doc. 17, 21] be denied as to Fisher's First Amendment freedom of speech claims as asserted against all three Defendants based on the allegations that his personal mail was seized for a period of two month;

2.	THAT Defendants' Motions to Dismiss be granted with respect to all other claims.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge